UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————————X

MARK LAFFEY, PHILIP LAFFEY, U.S. 1 LAFFEY
REAL ESTATE CORP. d/b/a LAFFEY FINE HOMES,
LAFFEY ASSOCIATES, LLC, eREALTY TITLE
AGENCY CORP., TCG GROUP, INC., 55 NORTHERN
BLVD., LLC, US 1 LAFFEY REAL ESTATE OF
BROOKVILLE, INC., US 1 LAFFEY REAL ESTATE OF
NEW HYDE PARK, INC. and GREENVALE COLONIAL
HOUSE, LLC,

                                         Plaintiffs,

            -against-

EMMETT LAFFEY, GREGORY BERKOWITZ,
JOHN SCHOONMAKER, SCOTT CONLON,

                    the "Ringleader Defendants",

            -and-

LAFFEY FINE HOMES INTERNATIONAL LLC, US 1
LAFFEY OF WILLISTON PARK, INC.,

                    the "Enterprise Defendants",

            -and-

KAREN BERKOWITZ LAFFEY, DEE DEE BRIX, MARIA
BABAEV, NATALIE McCRAY, REGINA ROGERS, JOE
PIMENTA, JIMMY TUBBS, SONNY DeCLARA, LISA
CERRETA, CARA BUSTO, IRINA PASHINSKY, DORA
ZELYAKOVSKY, PETER MORRIS, CHRISTOPHER HEIN,
ELAINE LUPO, JOHN DOE No. 1, JOHN DOE No. 2, and
JOHN DOE No. 3,

            the "Conspiring Individual Defendants",

            -and-

QUONTIC BANK, THE ROSLYN SAVINGS BANK, A
DIVISION OF NEW YORK COMMUNITY BANK,
GREATER JERICHO CORP., MULTIPLE LISTING
SERVICE OF LONG ISLAND, INC., WHERETOLIVE.COM
INC., LINCOLN LAND SERVICES, LLC, and SIGNATURE
PROPERTIES OF HUNTINGTON, LLC a/k/a SIGNATURE
PREMIER PROPERTIES,

            the "Conspiring Corporate Defendants".

————————————————————————————X

**CERTIFICATION IN
OPPOSITION TO MOTION
FOR A PRELIMINARY
INJUNCTION**

Civil Action No. CV-13-519

Judge Assigned:
Hon. Joseph F. Bianco

Magistrate Judge
Hon. Arlene Lindsay

1

Matthew Dollinger, an attorney duly admitted to practice law in the State of New York, and in the United States District Court, Eastern District of New York, certifies the following to be true under penalty of perjury:

1.      I am a member of the firm of Dollinger, Gonski & Grossman, attorneys for the following Defendants: Emmett Laffey, Karen Berkowitz Laffey (Emmett Laffey's wife), Laffey Fine Homes International, LLC ("Laffey International"), and US 1 Laffey of Williston Park, LLC ("Laffey Williston").

## I. PRIOR PENDING LAWSUITS

2.      This action is nothing more than forum-shopping in an ongoing two-against-one dispute between three brothers. The antagonists -- Mark Laffey and Philip Laffey --  having suffered litigation setbacks, have come to this Court with nothing more than a common-law dispute over a one-time disbursement of money, made by the protagonist, Emmett Laffey, to his brothers and Irina Pashinsky in accordance with the agreement among all of them. The Plaintiffs' efforts to articulate a federal question fails.

3.      Dollinger, Gonski & Grossman also represents the following parties in the following pending lawsuits:

•       We represent Emmett Laffey and Laffey International in an action pending in the Supreme Court of the State of New York, Nassau County (Nassau County Index No. 7703/2012), assigned to the Honorable Timothy S. Driscoll, entitled:

> U.S. 1 LAFFEY REAL ESTATE CORP. d/b/a LAFFEY FINE HOMES, U.S.1 LAFFEY REAL ESTATE OF BELLEROSE, INC., LAFFEY ASSOCIATES, LLC, eREALTY TITLE AGENCY CORP. and 55 NORTHERN BLVD., LLC,
>
> Plaintiffs,
>
> -against-
>
> EMMETT LAFFEY and LAFFEY FINE HOMES

INTERNATIONAL LLC,

Defendants.

("Supreme Court Action"). **Opp.Ex. A.** The Plaintiffs in the Supreme Court Action have already been denied a preliminary injunction, **Opp.Ex. B,** and appointment of a Temporary Receiver for Laffey International, **Opp.Exs. C and D.**

>        •        We represent Laffey International and Laffey Williston in a summary proceeding pending in the District Court of Nassau County, First District (Index No. LT-6013/2012), entitled:

>        TCG GROUP, LLC
>        55 Northern Boulevard
>        Greenvale, New York 11548
>                -and-
>        55 NORTHERN BLVD., LLC,
>        55 Northern Boulevard
>        Greenvale, New York 11548
>                        Petitioners-Landlords,
>                -against-
>        LAFFEY FINE HOMES INTERNATIONAL, LLC,
>        55 Northern Boulevard
>        Greenvale, New York 11548
>                -and-
>        US 1 LAFFEY OF WILLISTON PARK, INC.,
>        55 Northern Boulevard
>        Greenvale, New York 11548
>                        Respondents-Tenants,
>                -and-
>        ABC CORP., the names of the corporate
>        Undertenant is fictitious and unknown to Petitioner.
>        The entity intended being those in possession
>        of the premises herein described.
>                        Respondent-Undertenant.

("Summary Proceeding"). The Petitioners are, among other things, seeking to evict unnamed Respondent, Emmett Laffey, from his own corporate headquarters at 55 Northern Boulevard, Greenvale, New York. We have made a motion to dismiss the Petition based upon a number of grounds, including prior-pending-action (i.e., the Supreme Court Action). This is the second summary proceeding brought. **Opp.Ex. E.** The first summary proceeding was withdrawn.

3

• We represent Emmett Laffey, Laffey International and John Schoonmaker in an action commenced in the Supreme Court of the State of New York, Nassau County (Index No. 13360/2012), entitled:

> MARK LAFFEY, PHILIP LAFFEY, U.S. 1 LAFFEY REAL
> ESTATE CORP. d/b/a LAFFEY FINE HOMES, U.S. 1
> LAFFEY REAL ESTATE OF BELLEROSE, INC., and US 1
> LAFFEY REAL ESTATE OF NEW HYDE PARK, INC.,
>       -against-            Plaintiffs,
> EMMETT LAFFEY, LAFFEY FINE HOMES INTERNATIONAL
> LLC, JOHN SCHOONMAKER, and ROSLYN SAVINGS BANK,
> a Division of NEW YORK COMMUNITY BANK,
>                         Defendants.

("Schoonmaker Action"). **Opp.Ex. F.**

• We represent Emmett Laffey as plaintiff in a slander action commenced in the Supreme Court of the State of New York, Nassau County (Index No. 015523/2012), against Philip Laffey and Mark Laffey ("Slander Action"). **Opp.Ex. G.**

4. Based upon the foregoing, I am fully familiar with the facts and circumstances contained in this Certification.

## II. PURPOSE OF THIS CERTIFICATION

5. I make this Certification in opposition to the preliminary-injunction motion filed by the Plaintiffs under Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), which seeks the following relief:

> (a) enjoining and directing Defendants not to sequester, take, spend, distribute and/or otherwise utilize the funds and/or property of GREENVALE COLONIAL HOUSE, LLC ("COLONIAL");
>
> (b) directing Defendants EMMETT LAFFEY and IRINA PASHINSKY not to spend, distribute, or otherwise part with funds in the amount of $650,000.00 obtained from COLONIAL; and
>
> (c) to return all property otherwise in their possession belonging to COLONIAL.

Order to Show Cause, at 2.

4

6.    The Plaintiffs' preliminary-injunction motion is wholly without merit and should be denied in all respects.  The Plaintiffs have failed to meet their burden.  See Hamilton v. New York City Municipal, 2012 WL 398819 (N.D.N.Y. 2012).  The Plaintiffs failed to show (1) that they will suffer irreparable harm if the preliminary injunction is not issued, and (2) that the Plaintiffs are likely to succeed on the merits of their claims, and the balance of hardships tips decidedly in favor of granting an injunction, and (3) that the public's interest weighs in favor of granting an injunction.  Singas Famous Pizza Brands Corp. v. New York Advertising, LLC, 468 Fed.Appx. 43, WL 899231 (2d Cir. 2012); Metropolitan Taxicab Board of Trade v. City of New York, 615 F.3d 152 (2d Cir. 2010).

7.    The funds disbursed by Emmett Laffey, the sole signatory on Colonial's bank account, were disbursed in accordance with the agreement between the owners of Colonial – Emmett Laffey, Mark Laffey and Philip Laffey.  Mark Laffey and Philip Laffey, themselves, previously made disbursements according to agreed-upon percentages: Philip Laffey (28.33%), Mark Laffey (28.33%), Emmett Laffey (28.33%), and Irina Pashinsky (15%).  The money was disbursed exactly the way it was supposed to have been disbursed.  There is no reason to compel Emmett Laffey and Irina Pashinsky to pay back money that belongs to them.  Philip Laffey and Mark Laffey, too, received their payment from Colonial – they have nothing to complain about.

## III.    PRELIMINARY STATEMENT

8.    Despite its forty-plus-party caption, this case comes down to a dispute between three brothers – Emmett Laffey, Mark Laffey and Philip Laffey – who, more than twenty years ago, were the recipients of the family real-estate-business enterprise, known to the public as

5

"Laffey Fine Homes," which was founded and built up by their father, Thomas Laffey, and which has been operated by the three brothers on a unanimous-consent basis for over twenty years.

9.      Colonial, the entity which is the focus of the instant preliminary-injunction motion, is among the related entities that make up the Laffey business organization.

10.     Beginning in June, 2012, Mark Laffey and Philip Laffey embarked on a relentless, and ruthless campaign to oust Emmett Laffey from the family business, and deprive him of the means to make a living and defend the various lawsuits that were to come – this being one of them. To date, Emmett Laffey's brothers have been unsuccessful as reflected in the decisions rendered in the Supreme Court Action. Emmett Laffey's brothers are now trying their luck in Federal Court, despite the fact that Justice Driscoll appointed a Temporary Receiver for U.S. 1 Laffey Corp. d/b/a Laffey Fine Homes, Laffey Associates, LLC, eRealty Title Agency Corp., and 55 Northern Blvd., LLC. **Opp.Ex. D.**[1]

11.     When Thomas Laffey gave the business to his sons he intended that they own and operate "Laffey Fine Homes" equally. Thomas Laffey was deposed as a non-party witness in the Supreme Court Action, was represented by counsel, was cross-examined by the attorneys who represent the Plaintiffs, and testified as to his intent. **Opp.Ex. H.**[2] As Justice Driscoll observed:

> [EMMETT LAFFEY and LAFFEY INTERNATIONAL] have provided deposition testimony of Thomas which is consistent with Defendants' position that it was Thomas' intention that the Brothers all work together and no Brother was permitted to put another Brother out of Business. . . . For years, consistent with Thomas' intent, the Brothers have operated these Entities on a unanimous consent basis.

---

[1] As discussed, infra, a temporary stay of the receivership order has been granted by the Appellate Division, Second Department, pending determination of a motion for a stay pending appeal.

[2] **Opp.Ex. H** is a copy of Thomas Laffey's signed deposition transcript, notarized on December 11, 2012.

**Opp.Ex. C**, at 11.[3]

12.     The Supreme Court Action was brought solely at the behest of Philip Laffey and Mark Laffey to determine whether Emmett Laffey was lawfully ousted from his management and directorship position at "Laffey Fine Homes". What began as a state court, declaratory-judgment action, has morphed -- literally and figuratively -- into a "federal case," whose sole purpose is to oust Emmett Laffey from the family business and cut off his ability to make a living, and to compete with his brothers. In the process, Philip Laffey and Mark Laffey have ensnared more than two dozen business entities and individuals who are wrongfully accused of participating in a criminal enterprise.[4]

13.     Philip Laffey and Mark Laffey make little effort to substantiate the merits of their racketeering claim, and refer only to the conclusory allegations made in their complaint, which

---

[3] After Judge Driscoll appointed a Temporary Receiver, Mark Laffey and Philip Laffey evidently met Thomas Laffey and cajoled him to sign an affidavit prepared by their counsel, to recant his sworn, and unamended deposition testimony. **Opp.Ex. I.** This was done outside of Thomas Laffey's attorney's presence, or knowledge. **Opp.Ex. J.** It is beyond belief that Thomas Laffey, (a) who appeared at his deposition with his own long-time (over thirty years) attorney, John J. Sullivan, Esq., and his wife of over forty-five years, (b) was examined and cross-examined under oath by all counsel, (c) who signed his deposition transcript without amendment, and (d) who did not previously provide an affidavit in support of or opposition to any motion, would, without coercion, recant his sworn testimony. What is incredible about Philip Laffey and Mark Laffey obtaining the Thomas Laffey affidavit is that, in opposing Emmett Laffey's receivership motion, it was argued that "Thomas Laffey's testimony was not reliable due to his faded recollection of the operation of the Plaintiff Entities and his sons' roles within the company." Affirmation of Thomas R. Fazio, December 20, 2012, at ¶10. **Opp.Ex. K.** They cannot legitimately argue that Thomas Laffey's power of recall was better when he signed an affidavit prepared by interested parties, as opposed to the live testimony he gave under oath.

[4] Among those named in this action is Scott Conlon, an attorney and former in-house counsel to "Laffey Fine Homes." The Plaintiffs claim that Scott Conlon failed to advise Philip Laffey and Mark Laffey that a Class Action had been commenced in this Court. The allegation made against Scott Conlon is false. Mark Laffey and Philip Laffey were told about the lawsuit, and the lawsuit is being defended by counsel appointed by the insurance carrier providing a defense to Colonial, "Laffey Associates, LLC d/b/a Laffey Fine Homes, and Emmett Laffey in the Class Action assigned to District Court Judge Arthur D. Spatt. See Discussion, infra.

is essentially an amalgam of the various arguments proffered over the past several months to the Supreme Court. **Opp.Ex. L.**[5]

14.     To oust Emmett Laffey from the family business and put him out of business completely, Philip Laffey and Mark Laffey have, among other things, (a) attempted to vote Emmett Laffey out of office, (b) evict him from the corporate headquarters, where Emmett Laffey has had his office for more than ten years, and which is owned by TCG Group, LLC, an entity owned equally by the three brothers; (c) withheld distributions and salary, and force Emmett Laffey to incur phantom income and tax liability; (d) formed a new entity called "Laffey Fine Homes International Realty, Inc." to compete with Emmett Laffey's already-existing, virtually-identically-named Laffey International; and (e) commenced lawsuits in three forums and made multiple motions for provisional relief in an effort to oust Emmett Laffey before any adjudication on the merits. Withholding distributions and salary is particularly effective in that it deprives Emmett Laffey of <u>his own money</u> and gives his brothers financial leverage.  The instant preliminary-injunction motion seeks to achieve the same result; <u>keep Emmett Laffey away from his money</u>.

15.     The instant preliminary-injunction motion targets Colonial, a previously-unnamed party.  The purpose of the injunction is to reverse the payments made by Emmett Laffey, as the only authorized signatory on Colonial's bank account, in accordance with the agreement with his brothers.  The money distributed belongs to Philip Laffey (28.33%), Mark Laffey (28.33%), Emmett Laffey (28.33%), and Irina Pachinsky (15%).  The payments were made by Emmett Laffey as previously agreed, and in the same way Mark Laffey and Philip Laffey, themselves, had

---

[5] **Opp.Ex.** L contains various affirmations and affidavits submitted on behalf of the Plaintiffs in the Supreme Court Action.  The exhibits annexed thereto have not been reproduced herein.

8

previously made disbursements. Philip Laffey and Mark Laffey received <u>their</u> checks. There is no reason to compel Emmett Laffey to return the money.

## IV. STATEMENT OF FACTS

16.     The facts set forth herein are supported by the Affidavit of Emmett Laffey, sworn to February 11, 2013. They are set forth herein upon information and belief based upon information provided by Emmett Laffey. The facts are also supported by the documents annexed, most of which have been submitted in other pending actions.

## A.   The Laffey organization – "Laffey Fine Homes"

17.     Mark Laffey, Philip Laffey and Emmett Laffey have been operating numerous family-owned, limited-liability companies and corporations that make up the real-estate enterprise operated under the name "Laffey Fine Homes."

18.     Their father, Thomas Laffey, emigrated from Ireland at the age of seventeen. "Laffey Fine Homes" is a Long Island based real-estate enterprise, founded by Thomas Laffey in 1974, and is still a family-owned business by the three brothers. "Laffey Fine Homes" is headquartered at 55 Northern Boulevard, Greenvale, New York, a property owned by TCG GROUP, LLC, and the location of Emmett Laffey's primary office, where he performs his management and directorship duties for "Laffey Fine Homes."

19.     Philip Laffey, Mark Laffey and Emmett Laffey have operated "Laffey Fine Homes" on a unanimous-consent basis for over twenty years. They each have the right to manage "Laffey Fine Homes," and no one can be ousted without unanimous consent. This was their father's intent when he gifted the business to them. **Opp.Ex. H.**

20.    The business has grown into fourteen branch offices, together with affiliated companies that offer real-estate brokerage, title-insurance, new-home construction, relocation assistance, and mortgage-origination services.

**B.  The Plaintiffs and the opposing Defendant entities**

*(1) The Plaintiffs*

21.    U.S. 1 Laffey Real Estate Corp. d/b/a Laffey Fine Homes ("LFH"), is a real-estate agency owned <u>equally</u> by the three brothers.  It is in the business of providing real-estate-brokerage and related services.  Emmett Laffey is an officer, director and shareholder of LFH.

22.    Laffey Associates, LLC ("Laffey Associates") is a business entity that is also owned equally by the three brothers.  Emmett Laffey is an operating manager and member of Laffey Associates.

23.    eRealty Title Agency Corp. ("eRealty") is a title insurance agency owned equally by the three brothers.  Emmett Laffey is a shareholder, director, and officer of eRealty.

24.    55 Northern Blvd., LLC ("55 Northern") is a real-estate management company owned equally by the three brothers.  Emmett Laffey is an operating manager and member of 55 Northern.

25.    TCG Group, Inc. ("TCG") owns the corporate headquarters, and is owned by the three brothers equally.  Emmett Laffey is the managing member and member of TCG.

26.    US 1 Laffey Real Estate of Brookville, INC. ("Laffey Brookville") is owned by Mark Laffey.

27.    US 1 Laffey Real Estate of New Hyde Park, INC. ("Laffey New Hyde Park") is owned by Philip Laffey.

28.     Colonial is owned by the three brothers equally, and, until recently was a joint-venture partner with Wells Fargo Ventures, LLC.

## (2) *The Opposing Defendants*

29.     Emmett Laffey wholly Owns Laffey International, which is located at 45 Glen Cove Road, Greenvale, New York. Emmett Laffey formed Laffey International in February, 2012, after Philip Laffey and Mark Laffey insisted that Emmett Laffey separate his team of agents from the rest of the Laffey organization.

30.     Emmett Laffey wholly owns Laffey Williston, which is headquartered in Williston Park, New York.

## C. Emmett Laffey'S role in the Laffey Organization

31.     In 1986, Emmett Laffey joined his father in the business he founded. He took over the operation of the Laffey office located in Williston Park (Laffey Williston), and assumed other business duties. Thereafter, his brothers joined the organization. Mark Laffey took control of the Laffey office in Brookville (East Norwich) (Laffey Brookville). Philip Laffey took control of the Laffey office in New Hyde Park (Laffey New Hyde Park). These three offices have been independently owned by Emmett Laffey, Philip Laffey and Mark Laffey, respectively, and they have always competed with one another. There is no non-compete agreement among the three brothers. Laffey Brookville, Laffey New Hyde Park, and Laffey Williston, however, all contribute funds for the operation of "Laffey Fine Homes" and all participate in the "Laffey Fine Homes" website and are known as part of the "Laffey Fine Homes" organization.

32.     Thomas Laffey gifted "Laffey Fine Homes" to the three brothers in the early 1990s. For over two decades the three brothers have operated "Laffey Fine Homes" on a unanimous-consent basis, and have treated each other as equals as was their father's intent.

33.     For the past twenty years, Emmett Laffey has been the President, Chief Executive Officer and <u>overall director and manager</u> of "Laffey Fine Homes." Emmett Laffey has devoted his full-time efforts, talents, abilities, and financial resources to operate "Laffey Fine Homes," which has prospered under Emmett Laffey's direction and management. He created the majority of the on-line and off-line business tools and systems that support "Laffey Fine Homes." He designed all business logos, and coined the name "Laffey Fine Homes." He created and is the architect behind the entire on-line platform. He traveled throughout the United States and hand-picked the on-line vendors and executives. He hand-picked the international network to which "Laffey Fine Homes" belongs: "Leading Real Estate Companies of the World."

**D.    <u>Attempted ouster and takeover of the Plaintiffs' businesses</u>**

34.     Philip Laffey and Mark Laffey have plotted a takeover of "Laffey Fine Homes" by first ousting Emmett Laffey as an officer, director, manager and employee <u>without valid grounds, or authority</u>. As reflected in the record in the Supreme Court Action, Emmett Laffey's brothers have attempted to usurp his authority, block his participation in corporate affairs, take over the business activities of "Laffey Fine Homes" without authority, make corporate decisions without Emmett Laffey's knowledge or approval, alienate employees and managers, unilaterally cause the termination of corporate counsel, commence summary proceedings against Laffey International and Emmett Laffey without authority, and commence the instant lawsuit, again, without authority.

35.     Furthermore, Emmett Laffey's brothers have used the Plaintiffs as their own instrumentalities to cut off Emmett Laffey's ability to make a living, to refuse to disburse money and make distributions, deprive Emmett Laffey of the management of the various Laffey entities as he has for more than twenty years, and put Laffey International out of business.

36.     To set their plan into motion, on June 11, 2012, Mark Laffey and Philip Laffey orchestrated shareholders' and members' meetings ostensibly on behalf of LFH, Laffey Associates, eRealty, and 55 Northern to oust Emmett Laffey from his managerial and directorship duties.  This was allegedly done in accordance with By-Laws or Operating Agreements.  However, no By-Laws or Operating Agreements were ever adopted that give Emmett Laffey's brothers such a right, which is contrary to their father's intent when he gifted the business to them.

**E.     Commencement of the Supreme Court Action and the preliminary-injunction motion**

37.     The Supreme Court Action was commenced four days after the ouster meetings.  Initially, the Plaintiffs therein filed an Order to Show Cause seeking injunctive relief, but they withdrew their motion.  **Opp.Exs. M and N.**  The Plaintiffs in the Supreme Court Action demand judgment (a) approving and ratifying the ouster of June 11, 2012; (b) awarding sundry forms of permanent injunctive relief; and (c) awarding damages in excess of $5,000,000.00.  The Plaintiffs in the Supreme Court Action readily acknowledge that Emmett Laffey contests his ouster, and assert that a justiciable controversy exists, requiring judicial intervention to declare the rights of the parties.

38.     The Plaintiffs in the Supreme Court Action moved a second time for a preliminary injunction seeking the ultimate relief – ratification of Emmett Laffey's ouster, his exclusion from the family business, and putting Laffey International out of business.  A preliminary injunction was denied.  **Opp.Ex. B.**

13

**F. Appointment of a Temporary Receiver**

39.     When it became apparent Mark Laffey's and Philip Laffey's conduct were destructive to "Laffey Fine Homes," Emmett Laffey moved in the Supreme Court Action under Article 64 of the Civil Practice Law and Rules to appoint a Temporary Receiver over the business and property of LFH, Laffey Associates, eRealty, and 55 Northern, and to make distributions to the members and shareholders, and to set an equal salary and/or compensation for the principals on a going-forward basis.

40.     Appointment of a Temporary Receiver became necessary because there was a danger that the business and property of those entities would be lost, materially injured, wasted or destroyed.  The appointment of an independent Temporary Receiver was necessary to stop the ultra vires actions of Philip Laffey and Mark Laffey.  The appointment of a Temporary Receiver was particularly necessary given the pervasive antagonism toward Emmett Laffey, which threatened those entities' well-being and continued viability.

41.     The motion was granted by Justice Driscoll on January 28, 2013.  **Opp.Ex. C.**[6]  Enforcement of Justice Driscoll's Order was stayed temporarily pending determination of a motion for a stay pending appeal made in the Appellate Division, Second Judicial Department. **Opp.Ex. O.**  The motion is presently returnable in the Appellate Division February 20, 2013.

> The Court grants Defendants' motion for a temporary receiver over the business and property of the Plaintiffs LFH, Laffey Associates, eRealty and 55 Northern, and to set an equal salary and/or compensation for the principals on a going-forward basis, and to make distributions to the members and shareholders, and to manage and operate these entities, pending determination of this action.  For years, consistent with Thomas' intent, the Brothers have operated these Entities on a unanimous consent basis.  There is evidence before the Court that Plaintiffs have engaged in conduct which persuades the Court that, without the appointment of a receiver, there

_____

[6] On February 6, 2013, the Plaintiffs in the Supreme Court Action moved the Appellate Division of the Supreme Court, Second Department, for a stay pending appeal.

may be irreparable loss or waste to the subject property and a temporary receiver is needed to protect their interests. That conduct includes, but is not limited to: 1) Mark and Philip's failure to make distributions to Emmett although a tax liability will be incurred for those sums, 2) Philip's recent creation of Laffey Fine Homes International Realty, Inc., 3) Philip and Mark's issuance of the 'To whom it may concern' letter, on LFH stationery, notwithstanding the fact that there has been no legal determination regarding the propriety of the termination of Emmett and Emmett's appropriate role with the Laffey Entities, 4) Philip and Mark's misappropriation of commission funds owed to Emmett, and 5) Philip and Mark's termination of long-term Laffey Organization employees.

**Opp.Ex. C,** at 11-12.

42.     In the instant action, the Plaintiffs claim that Emmett Laffey will "seize control of the Plaintiff companies." This is unsupported by any facts, and hardly possible. Affidavit of Mark Laffey sworn to January 29, 2013, at 7, ¶15. Based on Justice Driscoll's decision and order, LFH, Laffey Associates, eRealty and 55 Northern, if the Appellate Division denies a stay pending determination of the appeal, will be subject to a receivership – to be operated and managed for the benefit of <u>all three brothers</u>. Philip Laffey and Mark Laffey, however, have taken steps to undo the receivership by moving for the stay pending appeal. Two questions: Why? Wouldn't a court-appointed receiver put an end to destructive conduct – regardless of who is to blame? Wouldn't a court-appointed receiver see to it that the assets of these entities are protected – not squandered by numerous lawsuits that siphon assets, and ruin the companies' good will? Let's not forget, it was Emmett Laffey that moved for a Temporary Receiver. If he was interested in "seizing control," the last thing he would want is a Temporary Receiver.

**G.   Disbursements from Colonial's account were lawfully made by Emmett Laffey according to the long-standing agreement with Philip Laffey and Mark Laffey**

*(1)  Formation and management of Colonial*

43.     Colonial was formed on September 2, 2009. **Opp.Ex. P.** It is a limited liability company owned equally by Philip Laffey, Mark Laffey and Emmett Laffey.

44.     On or about March 17, 2010, Mark Laffey, Philip Laffey and Emmett Laffey signed an operating agreement for Colonial that expressly provides that the Managing Members "shall be Emmett Laffey, Mark Laffey and Philip Laffey." **Mot.Ex. 1** (emphasis added).[7]

### (2) Emmett Laffey as sole signatory

45.     Since May 13, 2010, Emmett Laffey has been the sole signatory on Colonial's bank account established at Chase. **Opp.Ex. Q.**

### (3) Unauthorized effort to oust Emmett Laffey as a manager of Colonial

46.     On November 7, 2012, Philip Laffey and Mark Laffey orchestrated a number of special meetings for various Laffey entities, including Colonial.[8] **Opp.Ex. R.** Philip Laffey and Mark Laffey – in their unilaterally-assumed roles as officers and/or managers – without authority resolved to impose a requirement of two signatures on any Colonial checks. They also passed the following resolution in complete contravention of Colonial's operating agreement:

> . . . that Emmet Laffey is not manage day to day operations, including but not limited to employee hiring, is not to bind the Company in any way or hold himself out to be an 'authority' to perform any of the within referenced actions.

**Opp.Ex. R.**

47.     Despite the unauthorized resolution, Emmett Laffey remained Colonial's sole signatory on Colonia's checking account maintained with Chase. **Opp.Ex. Q.**

### (4) The joint venture

48.     On or about October 30, 2009, Colonial and Wells Fargo Ventures, LLC ("Wells Fargo") formed a joint venture known as First Allied Home Mortgage, LLC ("First Allied")

---

[7] **Mot.Ex.** refers to exhibits annexed to the Plaintiffs' Order to Show Cause.

[8] This was done after they were denied a preliminary injunction in the Supreme Court Action.

to perform bona fide and substantial loan origination services. Colonial owned 49.9% and Wells Fargo Ventures, LLC owned 50.1% of the joint venture.

### *(5) Dissolution of the joint venture*

49.     In June, 2012, Colonial's joint-venture partner, Wells Fargo, elected to dissolve the joint venture. **Opp.Ex. S.** Mark Laffey and Philip Laffey refused to agree on a formal dissolution agreement with Wells Fargo, and Wells Fargo proceeded unilaterally, as was its right, to dissolve the joint venture as of December 31, 2012. Wells Fargo agreed to pay the required termination fee by January 30, 2013.

### *(6) Wells Fargo paid Colonial the requisite termination fee*

50.     Prior to January 30, 2013, the termination fee of $1,452,648.00 was paid to Colonial and disbursed by Emmett Laffey. This money was disbursed by Emmett' Laffey in accordance with the agreement between the three brothers, and their agreement with Irina Pashinsky.

51.     An additional $775,000.00 is expected to be paid to Colonial by Wells Fargo under a Pipeline Purchase and Sale Agreement dated December 31, 2012. **Opp.Exs. T and U.** Accordingly, Colonial is not insolvent as the Plaintiffs argue.

### *(7) Agreement with Irina Pashinsky*

52.     On or about June 9, 2010, Emmett Laffey, Philip Laffey and Mark Laffey, as members of Colonial, entered into a written agreement with Irina Pashinsky, under which they agreed that she receive 15% as "a non-capital profit and loss interest" in Colonial. **Opp.Ex. V.** The remaining 85% would be disbursed to the three brothers in equal shares. The percentage interests were expressly fixed in this agreement, and disbursements were made accordingly.

17

**(8)** ***Emmett Laffey's disbursements were made in accordance with the agreement between the three brothers, and their agreement with Irina Pashinsky***

53.     Colonial's records dating back to 2011 show that the three brothers adhered to their agreement, disbursing funds according to the agreed-upon percentages. **Opp.Ex. W**. With the exception of the disbursements made jointly by Mark Laffey and Philip Laffey on August 6, 2012, all Colonial disbursements were made by Emmett Laffey – the sole signatory on Colonial's account.

54.     On August 6, 2012 <u>Mark Laffey and Philip Laffey[9] signed Colonial checks disbursing $220,657.43 in accordance with their agreement as follows</u>:   Irina Pashinsky – $33,098.59; Philip Laffey – $62,519.58; Mark Laffey – $62,519.58; Emmett Laffey – $62,519.58. **Opp.Ex. X.**

55.     In support of their preliminary-injunction motion, the Plaintiffs assert that Emmett Laffey unlawfully disbursed $1,500,000.00 from Colonial's account.   This is not true. Emmett Laffey's disbursement in January, 2013 was exactly what was required to be done when the funds came into Colonial, and exactly what Philip Laffey and Mark Laffey had agreed to, and what they, themselves, had previously done. **Opp.Ex. MM.** Emmett Laffey disbursed the $1,500,000.00 as follows: Irina Pashinsky – $225,000.00; Philip Laffey – $425,000.00; Mark Laffey – $425,000.00; Emmett Laffey – $425,000.00. **Opp.Ex. Y.**

56.     Mark Laffey's and Philip Laffey's only objection can be that their brother, Emmett Laffey, actually received the money he was entitled to.

---

[9] We note that the checks were negotiated even though Mark Laffey and Philip Laffey were not signatories on Colonial's account.

57.     Furthermore, Philip Laffey's and Mark Laffey's claim that Colonial is insolvent is without merit.  Colonial presently has $50,000.00 in its account, and will receive $775,000.00 under the Pipeline Purchase and Sale Agreement. **Opp.Ex. U.** Moreover, Wells Fargo is holding $150,000.00 as security for the Class Action ($100,000.00 for the Class Action and $50,000.00 for expenses). **Opp.Ex. Z.**

58.     This brings us to the Class Action Philip Laffey and Mark Laffey claim they know nothing about.

**H.     Philip Laffey and Mark Laffey were fully aware of the Class Action – Scott Conlon immediately told Mark Laffey and Philip Laffey about the Class Action**

59.     The Defendant, Scott Conlon, had been general counsel to "Laffey Fine Homes" for eight years before Philip Laffey and Mark Laffey caused him to resign in October, 2012. Philip Laffey and Mark Laffey sued Scott Conlon herein, claiming he failed to advise them of a Class Action that was filed in this Court. The allegation is completely false.

60.     On February 28, 2012, a Class Action complaint was filed in the United States District Court, Eastern District, as follows:

FLORBELA CUNHA and CARLOS ROCHA, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

LAFFEY ASSOCIATES, LLC a/k/a LAFFEY FINE HOMES, INC. d/b/a LAFFEY FINE HOMES; EMMETT LAFFEY; FIRST ALLIED HOME MORTGAGE, LLC; FIRST ALLIED MORTGAGE CORP; WELLS FARGO BANK, N.A.,

Defendants.

**Opp.Ex. AA.**

61.     The Class Action is related to the activities of the joint venture between Colonial and Wells Fargo. Colonial was initially not named in the Class Action. The complaint was

19

served at "Laffey Fine Homes" corporate headquarters on <u>March 7, 2012</u>. **Opp.Ex. BB.** On <u>March 7, 2012</u>, Scott Conlon emailed <u>Mark Laffey</u>, <u>Philip Laffey</u> and Emmett Laffey and advised them that the complaint had been served:

> We were served with a complaint this morning at HQ involving a potential class action against Laffey, FAHM and Wells. I will speak with everyone more about it but essentially it claims a violation of RESPA and the requirements of ABA. It is a large class action firm (Locks Law Firm) that commenced it and it is clear this is a shakedown for them to recover huge legal fees. I assume Wells will handle the majority of the defense and I would like to speak with their counsel as I am sure this is not the first time this issue has come up. Let me know who I should contact at Wells to get their info.

**Opp.Ex. CC.**

62.     On <u>March 14, 2012</u>, Scott Conlon tendered a claim to the Whitmore Group under an existing "errors and omissions policy." **Opp.Ex. DD.** The law firm of L'Abbate, Balkan, Colavita & Contini, L.L.P. ("L'Abbate") was retained by the carrier to defend the Class Action on behalf of Emmett Laffey and First Allied. L'Abbate filed an answer to the Class Action complaint on May 25, 2012. **Opp.Ex. EE.**

63.     An "Amended Class Action Complaint" was filed on June 8, 2012 naming additional parties, including Colonial. **Opp.Ex. FF.** When Scott Conlon learned that Colonial was named he emailed <u>Mark Laffey</u>, <u>Philip Laffey</u> and Emmett Laffey, and sought confirmation that Colonial would be defended:

> Robert[,] I just learned yesterday that Greenvale Colonial House was added as a defendant. It would make sense to me that the Wells attorney handling this would provide a defense for all parties. Can we confirm this is being done?

**Opp.Ex. GG.** L'Abbate immediately filed an answer to the "Amended Class Action Complaint," and included a defense for Colonial. **Opp.Ex. HH.**

64.     Because the Class Action was related to the joint venture, there was discussions between the joint-venture partners. On June 27, 2012, Robert Opdyke of Wells Fargo

emailed <u>Mark Laffey</u>, Emmett Laffey and Scott Conlon about setting up a reserve for the Class

Action in light of the pending dissolution of the joint venture:

> We will need to have additional conversation around the reserve amount, taking into account the pending <u>class action</u> complaint against First Allied Home Mortgage.

**Opp.Ex. II** (emphasis added).

        65.     On July 16, 2012, Robert Opdyke again emailed <u>Mark Laffey</u>, Emmett Laffey

and Scott Conlon about fixing a reserve for the Class Action:

> Good morning and I hope all is well. Our legal group has provided reserve guidance on the <u>Cunha v. First Allied class action</u> complaint at $100,000. Adding our reserve for all other trailing expenses of $50,000; the total reserve we will need to set up for First Allied is $150,000. Once we have our other items addressed, I will have the reserve number included in our revised agreement.

**Opp.Ex. Z.**

        66.     It is <u>absolutely incredible</u> for Mark Laffey to claim that Scott Conlon and

Emmett Laffey "hid from Philip and me the existence of this lawsuit." Affidavit of Mark Laffey,

sworn to January 29, 2013, at 9, ¶21. How can Mark Laffey assert that "within the past two weeks

or so, Philip and I have become aware of a federal class action lawsuit. . . ." Affidavit of Mark

Laffey, sworn to January 29, 2013, at 8, ¶20. <u>This is absolutely false.</u>

        67.     The Class Action was on everyone's radar. Mark Laffey and Philip Laffey

<u>were not ignorant</u> of the Class Action. Scott Conlon <u>did notify</u> them of the Class Action, and

tendered the claim to the insurance carrier. Colonial is duly represented in the Class Action.

Furthermore, despite the dissolution of the joint venture, $150,000.00 is in reserve for the Class

Action. Mark Laffey's and Philip Laffey's professed ignorance of the Class Action is a <u>clear</u>

<u>misrepresentation</u> to the Court.

**I.    The Plaintiffs offer no evidence that Emmett Laffey and Irina Pashinsky are involved in a "scheme to illegally seize control of Colonial's lawful mortgage business"**

68.    There is no non-competition agreement between the three brothers. The joint venture between Colonial and Wells Fargo has been dissolved. Emmett Laffey has every right to make a living and use his business acumen to create a new, successful, mortgage-brokerage company. The various lawsuits were brought to stop him.

69.    Among the false claims asserted by the Plaintiffs is the following:

> Moreover, as set forth in detail in our Complaint, Defendants' actions in taking such money and leaving Colonial in such a precarious state furthers their RICO scheme to illegally seize control of Colonial's lawful mortgage business. As set forth in the Complaint, Emmett and Pashinsky, acting in concert with their other conspirator defendants, have already seized control of the office space occupied by First Allied as well its furnishings, files, equipment, phones, copiers and all of its other business equipment as part of a new competing venture they have entered into with Defendant QUONTIC BANK. They have further prevented Colonial from finding a new joint venture partner.

Affidavit of Mark Laffey, sworn to January 29, 2013, at 9, ¶24.

70.    The claim against Quontic Bank has no merit. Indeed, by letter dated November 28, 2012, the attorneys who represent Philip Laffey and Mark Laffey in the instant action wrote to Quontic Bank asserting that Emmett Laffey has no authority to bind LFH. **Opp.Ex. JJ.**

71.    Quontic Bank wrote back on December 1, 2012, as follows:

> I am in receipt of your correspondence dated November 28, 2012. Please be advised that Quontic Bank is aware of your clients' current litigation with Emmett Laffey as well as Mr. Laffey's specific ownership interest in the various Laffey real estate entities and offices. In the event Quontic Bank moves forward with a joint venture and/or a marketing service agreement with Emmett Laffey, it will be doing so only with the entities in which Emmett Laffey maintains a one hundred percent ownership interest.

**Opp.Ex. KK.**

72.     Mark Laffey and Philip Laffey have offered no evidence of any "scheme" let alone a "RICO scheme" to show that Emmett Laffey and Quontic Bank are in cahoots to illegally seize control of Colonial's lawful mortgage business.

**J.      The Plaintiffs offer no proof to support their wild accusations**

73.     Statements that are no more than conclusions are not entitled to any weight.

74.     By example, the Plaintiffs state the following:

> [T]he Plaintiffs have to date uncovered and identified over ONE MILLION DOLLARS ($1,000,000) in additional monies which was stolen, embezzled and/or converted by Defendants. Upon information and belief, the Defendants' scheme has resulted in greater damage than is yet known to the Plaintiffs as the defendants' scheme and fraudulent conduct continue into the present.

Affirmation of Thomas R. Fazio, dated January 29, 2013, at 5, ¶11.  The Plaintiffs offer <u>no proof</u> to substantiate this claim.

75.     Without any proof the Plaintiffs also recite a laundry list of wrongs.  Among them are the following: fraud, deceit, assault, intimidation, internet and bank fraud, embezzlement, misappropriation of trade secrets, insider trading, usurpation of corporate opportunities, sabotage. <u>Id</u>. at 5-6.  The Plaintiffs, however, offer no evidence of these fantastic allegations.  At best, these allegations are conclusory.

**V.     IT IS EMMETT THAT WILL BE IRREPARABLY
         HARMED IF AN INJUNCTION IS GRANTED**

76.     The victims here are Emmett Laffey and "Laffey Fine Homes."

77.     Philip Laffey and Mark Laffey have taken a highly-successful, well-known, long-standing business enterprise, and used it as a tool to oust, and financially cripple their brother: Emmett Laffey.

78.     As observed by Justice Driscoll, the business enterprise is in danger of being

wasted and must be protected from Philip Laffey and Mark Laffey. **Opp.Ex. C.** The bad conduct

that Justice Driscoll found included Mark Laffey's and Philip Laffey's failure to make distributions

to Emmett Laffey despite resultant tax liability.

79.     The Plaintiffs have not shown irreparable harm to any Plaintiff.

## VI.    LIKELIHOOD OF SUCCESS HAS NOT BEEN SHOWN

80.     The Plaintiffs make little effort to demonstrate a likelihood of success on the

merits of its racketeering claims.  All that is asserted is the hope that the mere allegations in the

complaint will be proven:

> As set down in the Complaint, while still employed at LFH, the Ringleader
> Defendants, in concert with and through the use of some or all of the Enterprise
> Defendants, Conspiring Individual Defendants and/or Conspiring Corporate
> Defendants, have conceived, plotted and continue to execute a plan. . . .

Id. at 5.

## VII. THE PLAINTIFFS FAILED TO SHOW SERIOUS QUESTIONS
## GOING TO THE MERITS TO MAKE THEM A FAIR GROUND
## FOR LITIGATION PLUS A BALANCE OF HARDSHIPS
## TIPPING DECIDEDLY TOWARD THE PLAINTIFFS

81.     It cannot be disputed (a) that Colonial's operating agreement states that the

three brothers shall manage Colonial; (b) that Emmett Laffey was the sole signatory on Colonial's

account; (c) that Emmett Laffey, Mark Laffey and Philip Laffey agreed to pay 15% to Irina

Pashinsky and divide the rest equally; and (d) that Mark Laffey and Philip Laffey themselves made

the same disbursement in August, 2012.

82.     It is also undisputed that Philip Laffey and Mark Laffey have been trying to

oust Emmett Laffey from "Laffey Fine Homes" since June, 2012.

83.     This is a simple monetary claim, arising out of an intra-family dispute. Colonial's money should have been disbursed as it had been from inception.  Each of the four individuals entitled to be paid the income achieved by Colonial have received the money to which they are each entitled.

84.     The threshold legal issues have already been tendered in state court, where we believe they belong.  There is no public interest in an intra-family battle among three brothers.

85.     A balance of the equities tips against the Plaintiffs.

**CONCLUSION**

86.     The Plaintiffs failed to show (1) that they will suffer irreparable harm if the preliminary injunction is not issued, and (2) that the Plaintiffs are likely to succeed on the merits of their claims and the balance of hardships tips decidedly in favor of granting an injunction, and (3) that the public's interest weighs in favor of granting an injunction.

WHEREFORE, it is respectfully requested that the Plaintiffs' motion should be denied in its entirety, and that the Court grant such other and further relief which the Court deems just and proper.

Dated: Carle Place, New York
            February 11, 2013

MATTHEW DOLLINGER (0647)
A Member of the Firm of
Dollinger, Gonski & Grossman
Attorneys for Defendants, Emmett Laffey,
Karen Berkowitz Laffey, Laffey Fine
Homes International, LLC and US 1 Laffey
of Williston Park, LLC
One Old Country Road, Suite 102
P.O. Box 9010
Carle Place, New York 11514
(516) 747-1010