Edward K. Blodnick (EB1796)
Thomas R. Fazio (TF0871)
Steven R. Talan (ST5353)
BLODNICK FAZIO & ASSOCIATES, P.C.
1325 Franklin Avenue, Suite 555
Garden City, New York 11530
(516) 280-7105
eblodnick@blodnickfaziolaw.com


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
MARK LAFFEY, PHILIP LAFFEY,
U.S. 1 LAFFEY REAL ESTATE CORP. d/b/a                  **Dkt. No.**
LAFFEY FINE HOMES, LAFFEY ASSOCIATES, LLC.,            **13-cv-0519 (JB)(ARL)**
eREALTY TITLE AGENCY CORP.,
TCG GROUP, INC., 55 NORTHERN BLVD., LLC,
US 1 LAFFEY REAL ESTATE OF BROOKVILLE, INC.,
US 1 LAFFEY REAL ESTATE OF NEW HYDE
PARK, INC., and GREENVALE COLONIAL HOUSE, LLC,

        Plaintiffs,

   -against-

EMMETT LAFFEY, GREGORY BERKOWITZ,
JOHN SCHOONMAKER, SCOTT CONLON,
      the "Ringleader Defendants",
and

LAFFEY FINE HOMES INTERNATIONAL LLC,
US 1 LAFFEY OF WILLISTON PARK, INC.
      the "Enterprise Defendants",

and

KAREN BERKOWITZ LAFFEY,
DEE DEE BRIX, MARIA BABAEV,
NATALIE McCray, REGINA ROGERS,
JOE PIMENTA, JIMMY TUBBS,
SONNY DeCLARA, LISA CERRETA,

CARA BUSTO, IRINA PASHINSKY
DORA ZELYAKOVSKY, PETER MORRIS,
CHRISTOPHER HEIN, ELAINE LUPO,
JOHN DOE No. 1,
JOHN DOE No. 2, and
JOHN DOE No. 3,

        the "Conspiring Individual Defendants"

and

QUONTIC BANK,
THE ROSLYN SAVINGS BANK, A DIVISION OF
NEW YORK COMMUNITY BANK,
GREATER JERICHO CORP., MULTIPLE LISTING
SERVICE OF LONG ISLAND, INC.,
WHERETOLIVE.COM INC.,
LINCOLN LAND SERVICES, LLC, and
SIGNATURE PROPERTIES OF
 HUNTINGTON, LLC a/k/a SIGNATURE
PREMIER PROPERTIES,

        the "Conspiring Corporate Defendants".



## REPLY AFFIRMATION IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Thomas R. Fazio, an attorney at law admitted to practice before this Court, affirms as follows under penalty of perjury:

1. I am a member of BLODNICK FAZIO & ASSOCIATES, PC, attorneys for the plaintiffs herein. I make this affirmation in reply to the opposition of Defendants EMMETT LAFFEY ("Emmett), KAREN BERKOWITZ LAFFEY ("Karen"), LAFFEY FINE HOMES INTERNATIONAL LLC ("International") and US 1 LAFFEY OF WILLISTON PARK, INC. ("Williston Park") (together, the "Opposing Defendants"), opposing Plaintiff's motion for a Preliminary Injunction herein.

2. Opposing Defendants set forth their tale of woe, of poor Emmett being ganged up on by his brothers, the vast majority of which is completely irrelevant to the motion before this Court (and which in any event does not hold up under scrutiny).

3. It must be noted that despite Emmett's attempts to make it seem otherwise, there has been no attempt to 'oust' Emmett from any of the businesses; that is, no attempt has been made, or will be made, to take his ownership interest in any of the jointly owned businesses away.

4. The only matter at issue at this juncture is the propriety of the unilateral decision by Emmett to distribute $1,500,000 belonging to Plaintiff Greenvale Colonial House LLC ("Greenvale"), without the consent of his brothers and co-managing members, Plaintiffs Mark Laffey ("Mark") and Philip Laffey ("Philip").

5. It is the contention of Mark, Philip and Greenvale that the distributions made by Emmett, to himself, to Defendant Irina Pashinsky, and which were ostensibly made to Mark and Philip as well, were unilaterally and improperly made in contravention of the Operating Agreement for Greenvale.

6. Despite their voluminous nature and misdirection, the papers in opposition to the instant motion fail to address the Operating Agreement between Mark, Philip and Emmett for Greenvale.

7. That Operating Agreement is annexed to the original moving papers herein as Exhibit 1 and another copy is annexed hereto as Exhibit A for the Court's convenience.

8. That Agreement provides, at Section 4.2 [e] commencing at the bottom of page 3 thereof, that certain actions shall "require the written consent of all of the Members".

9. Included in those actions requiring unanimous written consent are:

    a. Declaration of dividends by, or withdrawal of capital contributions from, the company (Sec. 4.2 [e] (b)); and

    b. Any expenditure in excess of $25,000.00 (Sec. 4.2 [e] (f)).

10. It is undisputed that Emmett took it upon himself to distribute $1,500,000 to the members and profit participants, without the consent of Mark and/or Philip; indeed without even *consulting* them.

11. That Emmett got bank checks, negotiated his and gave Pashinksy hers the same day, but held onto Mark's and Philip's is very telling.

12. He knew Mark and Philip would not consent but wanted to ensure that he and Pashinsky would get the money and that there would be nothing Mark and Philip could do to enforce their rights as majority owners.

13. Moreover, Mark and Philip *did not* cash or deposit the checks Emmett had improperly drawn to them.

14. Exhibit 3 to the moving papers herein is a copy of the email sent by Emmett to Mark and Philip, informing them for the first time that he had, the previous day, taken out the money to make those distributions. Another copy of that email is annexed hereto as Exhibit B, for the Court's convenience.

15. Moreover, Emmett acknowledges the November 7, 2012 members meeting of Greenvale, at which it was resolved that any checks to be issued by Greenvale required two signatures. A copy of the minutes of that meeting was annexed to Emmett's own opposition papers as Exhibit R and is annexed hereto as Exhibit C.

16. Emmett was therefore aware, even if the bank was not, that he was no longer able to withdraw funds from Greenvale's account on his own authority.

17. That, however, did not stop him, just as other duly taken corporate actions do not stop him from doing things unless he happens to agree with those actions.

18. In his opposition papers, Emmett makes much ado about the family businesses having to be run by unanimous consent; however, he freely acknowledges that he took the action of distributing $1,500,000 without such consent, merely because he thought it was the right thing to do for his own needs.

19. He claims that his brothers kept his money from him by not making distributions from the family owned companies, but neglects to inform the Court that they made no distributions to themselves either.

20. He also neglects to tell the court that he has two solely owned real estate brokerage houses from which he can take whatever distributions he wants, whenever he wants.

21. Far from being put out of business, as he claims, Emmett has several sources of funds.

### EMMETT'S CLAIMS OF THE NEED FOR UNANIMITY

22. Emmett repeatedly claims that unanimity with his brothers is required for the operation of the various family businesses, allegedly because their father intended for that to happen when he gifted them those businesses.

23. Emmett also freely acknowledges that there are no documents, no shareholder agreements, no corporate resolutions, nothing that requires unanimity for the bulk of those businesses other than that alleged intent.

24. Annexed hereto as Exhibit D is a copy of an affidavit from Thomas Laffey, the father of Emmett, Mark and Philip, wherein he clarifies that although it was his hope and even his expectation that they would do things by unanimous, mutual consent, it was never made a requirement that they do so.

5

25. That affidavit was presented to the Appellate Division of the New York State Supreme Court as part of a motion to stay the appointment of a receiver as ordered by Justice Driscoll of the Nassau County Supreme Court.

26. Emmett made much noise about the fact that Thomas Laffey's attorney, John Sullivan, was not consulted about that affidavit before it was signed.

27. Annexed hereto as Exhibit E is an affirmation that attorney, John Sullivan, who prepared the documents giving the family businesses to Philip, Mark and Emmett, clearly stating that no such requirement was ever imposed, nor even discussed, to the best of his recollection.

28. NYS law provides that simple majority vote is sufficient for most corporate (or LLC) actions.  Although Emmett claims that no writing was ever executed allowing for less than a unanimous vote to control the corporate business of the family entities, no such writing is required. Indeed, a writing would be required to ***institute*** a unanimity requirement.

29. The only time such a writing was executed by the brothers was in connection with Greenvale, whose money is the subject of the instant motion.

30. Greenvale ***does*** require unanimous consent to take certain actions.

31. Emmett took actions without that unanimous consent, in contravention of the operating agreement he freely and voluntarily executed.

32. Emmett's two faced behavior, claiming a need for unanimity when it suits him (but doesn't really exist) and ignoring a requirement of unanimity (which ***does*** exist) when

6

*that* course of action suits him, should not be endorsed by this Court.

**WHEREFORE** it is respectfully requested that the instant motion be granted in all respects.

DATED:   Garden City, New York
         February 19, 2013

                                    _____/s/_____
                                    THOMAS R. FAZIO
                                    Blodnick, Fazio & Associates, P.C.
                                    Attorneys for Plaintiffs
                                    1325 Franklin Avenue, Suite 555
                                    Garden City, New York 11530
                                    (516) 280-7105
                                    tfazio@blodnickfaziolaw.com